## TUTTLE v DEPARTMENT OF STATE HIGHWAYS

Docket No. 56992. Argued May 6, 1976 (Calendar No. 17).—Decided July 8, 1976.

Plaintiffs Joel and Ramona Tuttle brought an action for damages arising out of an automobile accident against the Department of State Highways alleging negligence in the construction, and opening, and insufficient marking of a newly opened intersection of state highway M-43 with Sprinkle Road in Kalamazoo County. The Court of Claims, Charles A. Wickens, J., granted judgment for the defendant. The Court of Appeals, Bashara, P. J., and R. B. Burns and M. J. Kelly, JJ., affirmed (Docket No. 19882). The plaintiffs appeal, contending that the findings of the Court of Claims do not comply with the requirements of the GCR 1963, 517.1, and that the findings of the court were erroneous. *Held:*

1. The Court of Appeals took an unduly restrictive approach to its reviewing function. A finding of a trial court in a bench trial is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

2. The finding that the defendant was not negligent is clearly erroneous because the undisputed facts show that the defendant failed to carry out its own work orders to add flashing lights and other signals at the intersection after the defendant's traffic engineers had determined that the existing stop control devices were not sufficiently noticeable. One full working week elapsed between the time the defendant first determined that additional safeguards were needed and the date of the accident. The undisputed testimony was that the defendant's failure to install additional signals was a proximate cause of Mr. Tuttle's injuries.

The judgment of the Court of Claims is reversed and the case is remanded to that Court for a determination of damages.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error §§ 839–845.
[2] 39 Am Jur 2d, Highways, Streets, and Bridges §§ 400, 492.

60 Mich App 642; 231 NW2d 482 (1975) reversed.

1. APPEAL AND ERROR—FINDINGS OF FACT—BENCH TRIAL.

A finding of fact by a court sitting in a bench trial is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed (GCR 1963, 517.1).

2. HIGHWAYS—DEPARTMENT OF STATE HIGHWAYS—NEGLIGENCE—INTERSECTIONS—STOP SIGNS.

The Department of State Highways negligently opened and marked a new highway intersection with inadequate stop signals, and was liable for a plaintiff's injuries in a collision at the intersection with another car proximately caused by the inadequacy, where the defendant department failed to carry out its own work orders to add signals at the intersection after the defendant's employees had determined that the existing stop control devices were not sufficiently noticeable, and the accident occurred one full working week after the defendant first determined additional safeguards were needed (MCL 691.1402; MSA 3.996[102]).

*Bauckham, Reed, Lang & Schaefer* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Louis J. Caruso,* Assistant Attorney General, and *George J. Platsis,* Special Assistant Attorney General, for defendant.

FITZGERALD, J. Plaintiff Joel Tuttle suffered severe injuries in an intersectional collision with a vehicle driven by Loretta Lowe on November 29, 1970. Thereafter, plaintiffs, husband and wife, brought this action in the Court of Claims alleging negligent construction, opening and signing of the intersection by defendant Department of State Highways. It was plaintiffs' contention that the newly-opened intersection, which was under defendant's jurisdiction, was not "reasonably safe and fit for travel"[1] by reason of inadequate signali-

---

[1] MCLA 691.1402; MSA 3.996(102).

zation. The Court of Claims found that defendant
was not negligent and entered a judgment of no
cause of action against plaintiffs. The judgment
was affirmed by the Court of Appeals which, at 60
Mich App 642, 647–648; 231 NW2d 482 (1975), took
an unduly restrictive view of its reviewing func-
tion in this non-jury case:

"In order for us to accept plaintiff's premise [that the
trial court's finding of no negligence was against the
great weight of the evidence] we would have to substi-
tute our judgment for that of the trial court. This we
may not do."

We reverse the Court of Appeals and the trial
court, remanding to the Court of Claims for a
determination as to damages. Under GCR 1963,
517.1, an appellate court will set aside the findings
of fact of a trial court sitting without a jury when
such findings are clearly erroneous. In construing
comparable "clearly erroneous" language in Rule
52(a) of the Federal Rules of Civil Procedure, the
United States Supreme Court has stated that "[a]
finding is 'clearly erroneous' when although there
is evidence to support it, the reviewing court on
the entire evidence is left with the definite and
firm conviction that a mistake has been commit-
ted".[2] After a review of the entire record of this
case, we are left with such a definite and firm
conviction. Appropriately, the "judicial sieve" with
which we have sifted the evidence in this non-jury
case is "of finer mesh than the one correspond-
ingly employed on review" of a jury's verdict.[3]

---

[2] *United States v United States Gypsum Co,* 333 US 364, 395; 68 S
Ct 525, 542; 92 L Ed 746, 766 (1948). *See, also, In re Lavacs' Estate,* 16
Mich App 521, 525, fn 4; 168 NW2d 414 (1969).

[3] *Schneider v Pomerville,* 348 Mich 49, 54–55; 81 NW2d 405 (1957):
"Our duty under said Rule 64, the question being duly posed and
saved for review, is to sift the evidence for determination whether it

The collision occurred at approximately 6 p.m. on November 29, 1970 at the intersection of M-43 (Gull Road) and Sprinkle Road in Comstock Township, Kalamazoo County, Michigan. Central to the resolution of this case are the circumstances surrounding the construction, opening and signing of this intersecting stretch of Sprinkle Road. Sprinkle Road is a five-lane, semi-limited access arterial road running north from highway I-94, east of the City of Kalamazoo. The first section, between I-94 and East Main Street, was opened for travel in 1968 by the County Road Commission. Prior to its opening, traffic signals were installed at all five major intersections on Sprinkle, and speed limits were set at 55 miles per hour.

In 1969 and 1970, Sprinkle Road was extended north from Main Street across highway M-43 to G Avenue. It was this intersection that was opened on November 19, 1970, some ten days prior to the

clearly preponderates in favor of the appellant's cause. Necessarily, the judicial sieve will be of finer mesh than the one correspondingly employed here on review of denial of motion for new trial in a jury case. This is as it should be. A jury's verdict-view of facts is entitled to an even higher degree of appellate respect than is a judge's verdict-view of the same facts, learned though the judge may be in law. For reasons known well to students of American history, a finding of fact by 'the twelvers' is more apt to be sound than that of one man. If this be right, our task at bar is bound to be a more difficult one than if the judgment below had been entered on verdict of a jury. When in rare instance a jury's verdict is judged contrary to overwhelming weight of evidence, the conclusion must be so obvious that verdict-sustaining argument loses all force. On the other hand, when evidence is appraised to determine clear preponderance thereof, forceful argument each way subsists to the last and usually survives final judgment." (Footnotes omitted.) *See, also, Brady v Michigan Consolidated Co,* 31 Mich App 498, 499, fn 1; 188 NW2d 58 (1971).

We emphasize that in this case there was little conflict between trial testimony and documents contemporaneous to the events surrounding the accident. Therefore, we do not ignore the command of GCR 1963, 517.1 to give special regard to the opportunity of the trial court to judge the credibility of witnesses who appeared before it. After thorough review of the admittedly cold record, this is a case where we can say without hesitation that mistake was committed below.

Tuttle-Lowe collision. The five-lane road was 60 feet in width, had a curve design speed of 70 miles per hour, and like its southern portion had day-night speed limits of 55 miles per hour. Banked curves approximately 300 feet to 500 feet north and south of M-43 were designed to provide a right angle intersection with M-43 which is a two-lane, state trunkline, 55-mile-per hour highway running northeast out of the City of Kalamazoo.

Because of the high approach speeds, the existing signalization on the southern portion of Sprinkle Road, the width and curves of the road, and because of the anticipated high volume (8,000 to 10,000 vehicles per day) using Sprinkle across M-43, the Kalamazoo County Road Commission requested more than a year in advance of the opening that defendant consider signalization of the intersection. The county had made its traffic volume estimate based on known traffic counts on M-43, on nearby roads parallel to Sprinkle, and on the southern portion of Sprinkle. The intersection was, however, under defendant's jurisdiction by virtue of the fact that M-43 is a state trunkline highway. In an October 30, 1969 letter to defendant's district traffic and safety engineer, the County Road Commission requested as follows:

"In the construction of the new Sprinkle Road extension (East Main to G Avenue), scheduled for the spring of 1970, the Commission feels that the above reference intersection be brought to your attention and consideration given by your department to the following:

"1. That a signalized intersection be established at the corner of Gull Road and Sprinkle Road to control the anticipated high traffic volume.

"2. That turning lanes be established on Gull Road in conjunction with our construction to facilitate traffic flow."

The request for a signal was denied by defendant pending a study of the actual volume of traffic which would use the new intersection.

In February of 1970, more than nine months prior to the opening, the County Road Commission submitted a written application to defendant "[t]o construct an at-grade intersection with existing M-43 with turning lanes as illustrated on the attached plans. This will also include installation of an overhead 2-way flashing stop (12") on Sprinkle with flashing yellow on M-43." This application was received by defendant, marked approved, except that the sentence referring to the flashing beacon was stricken, and thereafter returned to the county. Having received the county's requests for a full signal and thereafter for a flashing beacon, defendant did not at any time request in return that the county justify its concern for the safety of the intersection.

On November 9, 1970, defendant ordered traffic counts to be made at the intersection after opening. These were made on November 24 and 25, and prompted the following memorandum from the supervising engineer of defendant's electrical service unit:

"The attached signal warrant graph was completed from the manual portion of the survey which was recently received. The twenty-four hour machine counts are not yet available. It appears from a review of the graph that the standard rural signal warrant will be exceeded in a few months since Sprinkle Road now meets the warrant for at least six of the required eight hours and has been open to traffic for only a short length of time.

"As a result, we are approving the installation of traffic signal at the subject intersection. Since approaching traffic speeds on M-43 (Gull) generally exceed forty miles per hour and since Sprinkle Road also exhibits

high approach speeds and is five lanes wide, we are recommending that oversize signals be installed. Since a new traffic signal is already scheduled for M-43 (Gull) and Nazareth, located about three quarters of a mile west of the subject intersection, interconnection will be required."

Meanwhile, the intersection had been opened with but one 36-inch reflectorized Stop Ahead sign and one 36-inch reflectorized Stop sign on each approach on Sprinkle Road to the intersection. Defendant's traffic and safety engineer testified that approximately one day after opening he began receiving reports of people not stopping and that he therefore drove the intersection at night. Upon inspection, he became concerned as to the noticeability of the signs, and ordered installation of large black and white cross-hatch backboards to be attached behind each Stop Ahead sign. He also ordered the installation of intersection symbol and name signs on highway M-43. This work order was to be completed by November 27, 1970. All evidence indicates that it was not so completed on November 29, the date of the accident.

On or about November 23, 1970, defendant's traffic and safety engineer was still concerned about violations of the stop control. He again drove the intersection and issued another work order requiring the installation of eight red and eight yellow battery-operated flashers. Two yellow flashers were to be attached to each of the Stop Ahead signs and the red flashers were to be similarly secured to the Stop signs. Again, the evidence establishes that this work order had not been carried out by the date of the accident.

Paul and Nancy Klomparens witnessed the accident. They had been traveling north on Sprinkle

Road toward the M-43 intersection. It was dark. There had been intermittent mist and fog, but there apparently were no visibility problems as they approached the intersection. Mr. Klomparens testified that he was anticipating the new intersection because he wanted to make a right turn on M-43. Nevertheless, he did not see the Stop Ahead sign, and only saw the Stop sign after he had rounded the approach curve and was approximately 50 feet from it. The Klomparenses testified that as they were stopped and preparing to make their turn, they saw the plaintiff's Volkswagen van traveling northeast on M-43 at approximately 45 miles per hour and saw Mrs. Lowe's Chevrolet station wagon proceeding south on Sprinkle at approximately the same speed when she entered the intersection without stopping. Both vehicles had their lights on. Neither slowed prior to impact. Mrs. Lowe testified that she did not see any signs on Sprinkle on her approach to the intersection and had no knowledge of it until she collided with plaintiff's vehicle. She testified that her brakes were in working order, and that she had consumed no alcohol or drugs on the day of the accident.

It is defendant's contention that it was a legitimate exercise of its legislatively granted discretion to choose not to signalize the subject intersection prior to opening. Defendant refers us to the uniform traffic signal control statute[4] and to the Michigan Manual on Uniform Traffic Control Devices which calls for "careful studies made at the location" before installation of full signalization, and to that portion of the manual which says that "it is best to consider installation of the flashing

---

[4] MCLA 257.608 *et seq.;* MSA 9.2308 *et seq.*

beacon only after lesser control devices have been tried". We need not reach the question of whether defendant negligently exercised its "discretion" regarding traffic control device installation at the intersection as of the date it was opened.[5] We do predicate clear error in the finding that defendant was not negligent when the undisputed facts show that defendant failed to carry out its own work orders after defendant had determined that the existing stop control was not sufficiently noticeable. One full working week elapsed between the date that defendant itself first determined that additional safeguards were needed and the date of the accident. Furthermore, the undisputed testimony of all witnesses convinces us that defendant's failure to take those additional safeguards was a proximate cause of plaintiff Joel Tuttle's injuries.

The Court of Appeals is reversed. Since full trial was had below and there are no claimed erroneous rulings on evidentiary matters, the judgment of the Court of Claims is set aside and the case remanded to that court for further proceedings as to damages only. Plaintiffs may tax their costs.

---

[5] *See,* however, *Mullins v Wayne County,* 16 Mich App 365, 380; 168 NW2d 246 (1969), where then-Judge T. G. KAVANAGH stated: "When Michigan adopted the uniform traffic signal control statute (MCLA § 257.610 [Stat Ann 1960 Rev § 9.2310]), which authorized the erection of traffic control devices in the discretion of the sign-erecting authority, it did not thereby relieve the road authority of the duty imposed over 75 years ago to construct and keep the road reasonably safe and convenient for public travel. See *State v Watson,* 7 Ariz App 81; 436 P2d 175 (1968)."

We note that the county authority having jurisdiction of Sprinkle Road above and below the M-43 intersection gave notice to defendant more than a year in advance of its belief that some type of signal was warranted. The county, of course, makes its determinations according to the same manual as does defendant. Furthermore, compliance with the manual does not necessarily satisfy the road authority's duty to maintain the highways in a condition reasonably safe and fit for travel. *Fraley v Flint,* 54 Mich App 570; 221 NW2d 394 (1974).

KAVANAGH, C. J., and WILLIAMS, LEVIN, COLEMAN, LINDEMER, and RYAN, JJ., concurred with FITZGERALD, J.